NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ASTRAZENECA PHARMECEUTICALS, LP, et al., : : : | Civil Action No. 05-5333 (JAP) |
| Plaintiff, : : | **MEMORANDUM OPINION AND ORDER** |
| v. : : | |
| TEVA PHARMACEUTICALS USA, INC., et al., : : : | |
| Defendants. : | |

**BONGIOVANNI, UNITED STATES MAGISTRATE JUDGE**

Presently before the Court is Plaintiff AstraZeneca Pharmaceuticals LP's ("AstraZeneca") motion to disqualify two of Defendant Teva Pharmaceuticals USA, Inc.'s ("Teva") proposed experts, Dr. Robert R. Conley and Dr. Ira D. Glick [Docket Entry No. 58]. For the foregoing reasons, AstraZeneca's motion as it pertains to Dr. Conley is GRANTED, and DENIED as it relates to Dr. Glick.

*Summary of the Parties' Positions*

The facts and circumstances surrounding Teva's designation of Drs. Conley and Glick as proposed experts are not in issue, and therefore will not be recited herein at length. AstraZeneca brings the instant motion because "[b]oth doctors are paid AstraZeneca consultants who have, through ongoing confidential relationships with AstraZeneca, acquired confidential information from AstraZeneca concerning the specific technology at issue in this case." Moving Brief at 1. Teva

responds that the two proposed experts, "far from being AstraZeneca insiders, have worked consistently and carefully to ensure that they maintain their professional integrity and work with pharmaceutical companies [like Pfizer, Eli Lilly, and Bristol-Myers Squibb] only as independent consultants." Opposition Brief at 2. Teva further asserts that "[t]here is no evidence in this case that Dr. Glick or Dr. Conley actually possess any AstraZeneca confidential information," and at any rate that "any information that may have been confidential is now publicly available...," an indication that any confidentiality that may have existed had been extinguished by the publication. Id. at 3. In sum, AstraZeneca argues that its relationships with the doctors preclude their acting as experts; Teva believes that any relationship between them and AstraZeneca is insufficient to warrant their exclusion.

*Legal Standard*

There exists no fundamental dispute between the parties as to the law concerning the disqualification of expert witnesses in this District, and the Court concurs with their assessment. A federal court is bestowed with the inherent power to disqualify experts, derived from its duty to "preserve confidence in the fairness and integrity of judicial proceedings." U.S. *ex rel*. Cherry Hill Convalescent v. Healthcare Rehab Sys., 994 F.Supp. 244, 248 (D.N.J. 1997).  In determining whether an expert who had a prior relationship with a party should be disqualified, a court must make two initial factual determinations. Cordy v. Sherwin Williams Co., 156 F.R.D. 575, 579 (D.N.J. 1994).  First, it must find that is was "objectively reasonable for the first party who retained the expert to believe that a confidential relationship existed." Cherry Hill Convalescent, 944 F.Supp. at 249; see also Cordy, 156 F.R.D. at 579. Second, the Court must find that the first party did in fact

2

disclose confidential information to the proposed expert, where "confidential information" is information subject to actual confidentiality agreements between the proposed expert and the party seeking exclusion. Id. "The party seeking disqualification bears the burden of establishing both the existence of confidentiality and its nonwaiver." Id. Once both factual determinations are made, the court should weigh policy considerations, to wit, the court's interest in preventing conflicts of interest and maintaining judicial integrity against fostering accessibility to experts with specialized knowledge and encouraging experts to pursue their vocations. Id. at 251.

*The Proposed Experts*

The extent of Drs. Conley and Glick's interaction with AstraZeneca over the last decade is outlined in their respective declarations filed under seal in conjunction with the instant motion, and therefore will not be outlined in great detail here; the parties are referred to those declarations, as well as to those portions of their papers filed under seal for a full background. In general however, Dr. Conley is a highly regarded clinician in the field of schizophrenia, and has worked with myriad drugmakers in a consultant capacity. More particularly, Dr. Conley has served AstraZeneca as an outside consultant for approximately six years on matters related to Seroquel, and during that time has signed no fewer than two confidentiality agreements pertaining to his area of expertise. Dr. Glick, well established in his field as well, has acted as both an investigator and public speaker for AstraZeneca. According to AstraZeneca, Dr. Glick in this capacity has been exposed to information deemed confidential pursuant to no fewer than two confidentiality agreements.

*Analysis*

<u>1. Was it was objectively reasonable for AstraZeneca to believe that a confidential relationship existed between it and both Drs. Conley and Glick?</u>

The "objectively reasonable belief" standard is not a high hurdle to clear, and the Court is satisfied that AstraZeneca had a basis for believing that a confidential relationship existed between it and the doctors. It is clear from both parties' submissions that Drs. Conley and Glick have been, at one point or another, subject to express, written confidentiality agreements with AstraZeneca pertaining to Seroquel. <u>See</u> <u>Moving</u> <u>Brief</u> at 8 ("Drs. Glick and Conley have, since their first association with AstraZeneca, been subject to express written agreements requiring them to keep AstraZeneca's confidential information secret."); <u>see</u> <u>also</u> <u>Opposition Brief</u> at 3 (referencing AstraZeneca's agreements with the proposed experts.) Indeed, the declaration of Charles R. Peipher, AstraZeneca's Seroquel Brand Director, and the attached documents outline with particularity the agreements made between the doctors and AstraZeneca. <u>Peipher Declaration</u> at 2-6. The documents, at the very least, evince an intent by the signatories to keep certain types of information regarding quetiapine and Seroquel, e.g. clinical, business and marketing, confidential.

Teva argues that the proposed experts "are not insiders with long relationships at AstraZeneca," but rather are "respected clinicians who often work as independent consultants and members of speaking panels for many other pharmaceutical companies involved in the development of antipsychotic drugs." <u>Opposition Brief</u> at 6. It further argues that if "both Dr. Conley and Dr. Glick are disqualified based upon their peripheral relationships with AstraZeneca, all other expert

4

clinicians in the field will likely be disqualified as well under such a broad standard." Id. Therefore, it asserts, the superficial nature of the relationship cannot give rise to an objectively reasonable belief that a confidential relationship exists.

The Court disagrees. As outlined above, disqualification occurs not only when the parties enter into confidential agreements; that is merely the first step. The first prong requires a factual finding, and does not ring in equity. Frankly, at this juncture the Court must only look to AstraZeneca's belief of the existence of a confidential relationship, and not the effects of that belief. Upon review, the Court finds that AstraZeneca has an objectively reasonable basis for its belief that a confidential relationship existed between it and the two proposed experts.

2.  Did AstraZeneca disclose any confidential information to Drs. Conley or Glick?

Having reviewed AstraZeneca's moving and reply papers, the Court requested that three previously redacted exhibits to the Peipher Declaration – Exhibits 3, 7, and 8 – be submitted for an *in camera* review. After conducting a close review of said exhibits in conjunction with all of the submissions, the Court concludes that Dr. Conley did in fact receive confidential information sufficient to satisfy the second prong. Proof indicating that Dr. Glick received such information is, however, lacking.

In the context of expert disqualification, disclosure of "confidential information" encompasses facts and ideas directly relating to or impacting the litigation in issue. See, e.g., Cherry Hill Convalescent, 944 F.Supp. at 250 ("[c]onfidential information ... includes ... discussion of the retaining party's strategies in the litigation ... the party's views of the strengths and weaknesses of each side, the role of each of the party's witnesses to be hired, and anticipated defenses")(internal

citations and quotations omitted); see also Civ. A. No. 95-883 (RPP), Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc., 2000 U.S. Dist. LEXIS 321 at *13 (S.D.N.Y. Jan. 20, 2000) (finding that confidential information was passed where the party seeking exclusion disclosed to the proposed expert "its judgments to what degree, in what areas, and when oral etoposide and other regimens may be used in treating ovarian cancer."); accord Michelson v. Merrill Lynch Pierce Fenner & Smith, Inc., Civ. A. No. 83-8898 (MEL), 1989 U.S. Dist. LEXIS 3013 at *11-13 (S.D.N.Y. March 28, 1989) (finding that confidential information disclosed to the proposed experts must bear a substantial relationship to the pending litigation.). It follows that information unrelated to the technology in issue cannot be considered "confidential information" for the purpose of satisfying the second prong.

AstraZeneca has not carried its burden of satisfying the second prong with respect to Dr. Glick. Although Dr. Glick had entered into confidential agreements with AstraZeneca, nothing before the Court shows conclusively that any confidential information was actually disclosed to Dr. Glick. The sensitive nature of the record before the Court precludes It from detailing here its factual basis; however, it is enough that the Peipher Declaration and accompanying documents, while clearly indicative of a confidential relationship, presents little more than generalities too vague to prove that, as a matter of fact, Dr. Glick received confidential information from AstraZeneca with respect to quetiapine and Seroquel. Therefore, Dr. Glick shall not be precluded from testifying as an expert for Teva in this matter.

The record as it relates to Dr. Conley, however, compels the Court to reach a different conclusion. As is evident from the record and *in camera* materials, Dr. Conley was exposed to highly sensitive marketing, business, and clinical information that clearly was not intended for publication, nor was ever subsequently published. Specifically, the Court is troubled by the in-depth nature of the

6

conclusions and recommendations of the Quetiapine National Advisory Board, described in Exhibit 8 to the Peipher Declaration. That document is indicative of a highly particularized analysis of the drug in issue conducted over a three-day period in 2006, with Dr. Conley listed as an "attendee." Though Teva argues that "Dr. Conley has confirmed that he did not receive any AstraZeneca information that would currently be considered confidential during his attendance" at two conferences, that assertion cannot be enough. The doctor's layman comprehension of "confidential" as a legal term does not carry the heft to sway the Court's reasoning. See generally Bristol-Myers Squibb, 2000 U.S. Dist. LEXIS 321 at *14 n.6 ("[The proposed expert]'s conclusory statement raises the issue of whether he is cognizant of the breadth of the term 'relevant' in the law as opposed to the scientific world."). The Court is satisfied that this information remains confidential, and relates specifically to both quetiapine and Seroquel.

3. Policy considerations

Because the Court concludes that AstraZeneca's belief that a confidential relationship between it and Dr. Conley exists is objectively reasonable, and because It finds Dr. Conley did in fact receive confidential information from AstraZeneca, the Court must weigh the exclusion of Dr. Conley as an expert against a policy counterbalance.

> The policy objectives that favor disqualification include the court's interest in preventing conflicts of interest and in maintaining judicial integrity. The policy objectives that weigh against disqualification include maintaining accessibility to experts with specialized knowledge and encouraging experts to pursue their professions. In balancing these concerns, courts have considered whether another expert is available and whether the opposing party will be unduly burdened by having to retain a new expert.

Cherry Hill Convalescent, 944 F.Supp. at 251; see also Cordy, 156 F.R.D. at 580.

Having made a finding that Dr. Conley has been exposed to confidential information regarding quetiapine and Seroquel, the Court further finds that allowing the proposed expert to continue his work for Teva could potentially create a conflict of interest. In so finding, the Court notes that Dr. Conley is currently under a confidentiality agreement with AstraZeneca regarding the technology in issue, possesses confidential information, and is currently available to Teva on matters related thereto. Given that Teva has access to Dr. Glick's expertise, another expert in the field is not only available but presently ensconced in the case, it appears that the Defendant will not be unduly burdened by having to retain a substitute for Dr. Conley.

*Conclusion and Order*

For the above-stated reasons, and for good cause having been shown,

IT IS on this 4th day of December, 2007

ORDERED that AstraZeneca's motion to preclude Dr. Glick from acting as an expert for Teva is DENIED; and it is further

ORDERED that AstraZeneca's motion to preclude Dr. Conley is GRANTED; and it is further

ORDERED that should Teva elect to replace Dr. Conley, it should do so no later than **December 31, 2007**; and it is further

ORDERED that the Clerk of the Court terminate this Motion [Docket Entry No. 58] accordingly.

s/Tonianne J. Bongiovanni
**HONORABLE TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**
